# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00520-CV

**Farrah Arsenia Agustin-Bunch, Appellant**

**v.**

**Texas Medical Board, Appellee**

### FROM THE 419TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-22-005519, THE HONORABLE CATHERINE MAUZY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The Texas Medical Board (the Board) issued a cease-and-desist order to Farrah Arsenia Agustin-Bunch after determining that she engaged in the unlicensed practice of medicine by referring to herself as a doctor on her social media site and on her website, making online statements speaking as a physician on medical issues, and asserting that, based on her medical knowledge, supplements she sells should be used to treat ailments such as cancer, diabetes, and heart disease. *See* Tex. Occ. Code §§ 155.001("A person may not practice medicine in this state unless the person holds a license issued under this subtitle."); 165.052(a) (authorizing Texas Medical Board to issue cease-and-desist order prohibiting unlicensed person from practicing medicine in state without license). Seeking review of the order in district court, Agustin-Bunch sued the Board. The district court affirmed the Board's order. Agustin-Bunch appeals, asserting that (1) the Board lacked jurisdiction to take disciplinary action against her, (2) the order was

invalid and not supported by substantial evidence; (3) the cease-and-desist proceedings did not comply with governing statutes and Board rules; and (4) the district court erred by sustaining the Board's objection to her presenting certain evidence that the Board argued was not part of the administrative record. We will affirm.

## BACKGROUND

Agustin-Bunch holds a Doctor of Medicine degree conferred by Saint Louis University in Baguio City, Philippines in 2003. Agustin-Bunch also obtained certification as a "Certified Naturopath Practitioner" issued by the Philippine Institute of Traditional and Alternative Health Care, which certification was valid until May 2022. In August 2021, Agustin-Bunch completed an eight-week online course in Nutrition Science offered by the Stanford Center for Health Education and a certificate program entitled Medicinal Plants offered by Cornell University. Agustin-Bunch is not licensed to practice medicine in the State of Texas.

In August 2022, the Board filed an Application for Cease and Desist Order against Agustin-Bunch alleging that Agustin-Bunch had violated the Medical Practice Act (the MPA), the Healing Art Identification Act, and related Board rules. *See id.* §§ 155.001-171.024 (Medical Practice Act), 104.001-.007 (Healing Art Identification Act). Specifically, the Board alleged that Agustin-Bunch maintained a website that states that she "graduated from Saint Louis University in 2003 as an M.D." but failed to state that her medical degree was obtained from Saint Louis University in Baguio City, Philippines. The website identified Agustin-Bunch as "Doctor Farrah," "Dr. Farrah," or "Dr. Farrah Agustin-Bunch, M.D." The Board alleged that the website also had a "Shop" page through which Agustin-Bunch sold various supplements including "Boston C concentrate," "Pixie Dust/Magnesium Citrate," and "Mega-Dose Vitamin

2

C-Ascorbic Acid." The Board alleged that the website included a "Research" page that contained "various articles either written or copy and pasted" by Agustin-Bunch in which she "offers medical advice and offers services to diagnose and treat ailments." The Board further alleged that Agustin-Bunch maintained social media sites on Facebook and YouTube and that on both platforms she "advertises herself as a doctor," and that in her Facebook posts she "[spoke] as a physician concerning medical issues and asserted that the supplements she sold would help alleviate medical issues." The Board further alleged that Agustin-Bunch created several YouTube videos in which she described her "expert medical knowledge as a physician and offer[ed] treatments, primarily supplements she sells on her website, to ailments and diseases such as cancer, HIV, diabetes, and heart disease." The Board alleged that, while residing in Texas, Agustin-Bunch "has been holding herself out to be a doctor to the public and promoting products that the FDA has determined require the supervision of a licensed practitioner."

Based on these allegations, the Board sought a cease-and-desist order to prohibit Augustin-Bunch from practicing medicine in the State of Texas without a license. *See id.* §§ 155.001 (person may not practice medicine in this state unless person holds license issued under Medical Practice Act); 165.052 (after notice and opportunity for hearing, Board may issue cease-and-desist order prohibiting person not licensed under Medical Practice Act from engaging in activity that violates Medical Practice Act).

The Board convened a disciplinary panel of Board representatives to conduct a cease-and-desist hearing. *See* 22 Tex. Admin. Code § 187.83 (Tex. Med. Bd., Proceedings for Cease and Desist Orders)[1]. Agustin-Bunch's counsel appeared at the hearing but Agustin-Bunch

---

[1] Citations to the Texas Administrative Code are to the version in effect when the Board instituted the cease-and-desist proceedings.

did not. The disciplinary panel considered evidence presented by the Board as well as rebuttal argument and exhibits submitted by counsel for Agustin-Bunch. At the conclusion of the hearing, the Board ruled in favor of issuing a cease-and-desist order and made the following findings of fact and conclusions of law:

FINDINGS

The Board finds that:

1. Respondent received all notice required by law and all jurisdictional requirements have been satisfied.

2. Respondent is not licensed to practice medicine in Texas.

3. Respondent has resided in Texas since 2020 and has availed herself of the laws of Texas.

4. Respondent operates www.doctorfarrah.com as well as a number of social media sites identifying herself as "Doctor Farrah", "Dr. Farrah", or "Dr. Farrah Agustin-Bunch, M.D." Regarding Respondent's website, there are a number of articles published in which she offers medical advice and services to diagnose and treat ailments and diseases. Respondent also sells various supplements such as Boston C concentrate, Pixie Dust/Magnesium Citrate, and Mega-Dose Vitamin C – Ascorbic Acid to treat these ailments and diseases. On her social media sites, Respondent advertises herself as a doctor and made posts speaking as a physician on medical issues and asserts that based on her medical knowledge, her supplements should be used to treat ailments such as cancer, diabetes, and heart diseases.

5. Respondent did not properly designate the authority or college that gave rise for Respondent to use the title of "doctor."

6. Respondent received a warning letter from the Food and Drug Administration notifying her that her products are misbranded and cannot be advertised as a treatment for certain diseases.

7. Respondent has cooperated in the investigation of the allegations related to this Order.

CONCLUSIONS OF LAW

Based on these Findings, the Board concludes as follows:

1. The Board has jurisdiction over the subject matter and Respondent pursuant to the Medical Practice Act, Title 3, Subtitle B, Tex. Occ. Code Ann. §§ 151.001 et seq.

2.      Section 151.002 of the Medical Practice Act [] provides that a person engages in the practice of medicine when the person diagnoses, treats or offers to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or attempts to effect cures of those conditions, when the person publicly professes to be a physician or surgeon or directly or indirectly charges money or other compensation for those services.

3.      Section 155.001 of the Medical Practice Act provides that a person may not practice medicine in this state unless the person holds a license issued under the subtitle.

4.      Section 165.159 of the Medical Practice Act provides that a person commits an offense if the person practices medicine without complying with the registration requirement imposed by the Act.

5.      Section 165.052 of the [Medical Practice] Act authorizes the Board to issue a cease and desist order prohibiting a person from engaging in any activity in violation of the Medical Practice Act or Board rules after notice and opportunity for hearing.

6.      22 Tex. Admin. Code Chapter 187 sets forth the Board's procedural rules for all Board proceedings; Subchapter I, Chapter 187, sets forth the Board's rules regarding cease and desist proceedings.

7.      Sections 165.101 and 165.103 of the Medical Practice Act provide that any violation of this Order constitutes grounds for imposing a civil penalty of up to $1,000 for each violation, and for recovery of the reasonable expenses of litigation, by action of the Attorney General, and each day a violation continues constitutes a separate violation.

Based on these findings and conclusions, the Board issued a cease-and-desist order prohibiting Agustin-Bunch from "acting as, or holding herself out to be, a licensed physician in the State of Texas," and ordered that she "cease and desist any unlicensed practice of medicine in the State of Texas." The order further specified that "[a]ny violation of this Order constitutes grounds for imposing an administrative penalty of up to $5,000 for each violation, and/or each day of a continuing violation, of the Medical Practice Act."

Agustin-Bunch challenged the order by filing a suit for judicial review in Travis County district court. The district court affirmed the Board's decision, and this appeal followed.

5

**DISCUSSION**

Judicial review of the Board's cease-and-desist order is governed by the Administrative Procedures Act (APA). *See Gonzalez v. Texas Med. Bd.*, No. 03-22-00205-CV, 2023 WL 7134982, at *9 (Tex. App.—Austin Oct. 31, 2023, pet. granted) (mem. op.) (holding that APA applies to appeal of cease-and-desist order issued by Board); *Brooks v. Texas Med. Bd.*, No. 03-14-00239-CV, 2015 WL 3827327, at *2 (Tex. App.—Austin June 18, 2015, no pet.) (mem. op.) (applying APA to suit for judicial review of cease-and-desist order issued by Board). Section 2001.174 of the APA requires that we reverse or remand a case for further proceedings "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions" are:

> (A) in violation of a constitutional or statutory provision;
>
> (B) in excess of the agency's statutory authority;
>
> (C) made through unlawful procedure;
>
> (D) affected by other error of law;
>
> (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole;
>
> (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tex. Gov't Code § 2001.174(2). In reviewing fact-based determinations under this standard, we simply ask whether, considering "the reliable and probative evidence in the record as a whole," some reasonable basis exists in the record for the agency's action. *See id.* § 2001.174(2)(E); *Texas Indus. Energy Consumers v. CenterPoint Energy Houston Elec., LLC*, 324 S.W.3d 95, 105 (Tex. 2010) (citing *Mireles v. Texas Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999)). We

must affirm the agency's findings if they are supported by more than a scintilla of evidence. *Mireles*, 9 S.W.3d at 131. We apply this analysis without deference to the district court's judgment. *See Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006). We presume that the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence, and the burden is on the contestant to demonstrate otherwise. *See Slay v. Texas Comm'n on Env't Quality*, 351 S.W.3d 532, 549 (Tex. App.—Austin 2011, pet. denied).

Agustin-Bunch's brief has identified seventeen issues, which reduce to four topics: (1) whether the Board had the authority to take disciplinary action against Agustin-Bunch; (2) whether the Board's cease-and-desist order was valid and supported by substantial evidence; (3) whether the cease-and-desist proceedings complied with relevant statutes and Board rules; and (4) whether the district court erred by sustaining the Board's objection to proffered evidence.

### Did the Board have authority to take disciplinary action against Agustin-Bunch?

Agustin-Bunch first complains that the Board did not have authority to discipline her based solely on the fact that she resides in Texas.[2] The Board, however, initiated a disciplinary proceeding against Agustin-Bunch pursuant to its statutory authority to regulate persons who are not licensed to practice medicine in the state "if it appears to the board" that the person "is violating [the MPA], a rule adopted under [the MPA], or another state statute or rule relating to the practice of medicine." *See* Tex. Occ. Code § 165.052(a). The Board notified Agustin-Bunch by letter dated August 5, 2022, that it had conducted an investigation of facts concerning her "possible violation of the Medical Practice Act." In its Application for Cease and

---

[2] Agustin-Bunch raises this complaint in her first issue.

Desist Order, the Board alleged that it was seeking a cease-and-desist order based on certain identified acts taken by Agustin-Bunch, a person not licensed to practice medicine in the State, that it contended constituted the practice of medicine. The unlicensed practice of medicine violates section 155.001 of the MPA. *See id.* § 155.001 ("A person may not practice medicine in this state unless the person holds a license under this subtitle."). Thus, the Board did not take regulatory action against Agustin-Bunch based on her residency in Texas but, rather, based on its determination that it appeared that she was practicing medicine in Texas without a license issued under the MPA.

Agustin-Bunch next asserts that the Board lacked authority to institute disciplinary proceedings against her based on online conduct, which she maintains does not constitute conduct occurring in Texas over which the Board has regulatory authority.[3] We disagree. Section 106.001(b) of the Texas Occupations Code expressly provides that "[t]he fact that an activity occurs through the use of the Internet does not affect a licensing authority's power to regulate an activity or person that would otherwise be regulated under this title." *Id.* § 106.001(b). The section defines "licensing authority" to include the Board. *Id.* § 106.001(a). The reference to "title" in the statute is to Texas Occupations Code Title 3, which includes the statutes prohibiting the unlicensed practice of medicine, *id.* § 155.001, and authorizing the Board to issue a cease-and-desist order to prevent an unlicensed person from doing so, *id.* § 165.052. Thus, the Board has the express authority to initiate disciplinary action against Agustin-Bunch even though the conduct at issue occurred online.[4] And, this Court has previously affirmed a

---

[3] Agustin-Bunch raises this complaint in her second issue.

[4] We reject Agustin-Bunch's arguments based on the inclusion of the term "health care practitioner" in the heading to Texas Occupations Code chapter 106. *See* Tex. Gov't Code

8

cease-and-desist order based on online conduct. *See Brooks*, 2015 WL 3827327, at *1 (affirming trial court's order affirming Board's cease-and-desist order based on contents of website).

Agustin-Bunch next asserts that the Board had no authority to discipline her for content appearing on the website because the website is "operated by DRF" and "DRF is a legal entity, and not an individual."[5] According to Agustin-Bunch, the articles appearing and the supplements sold on the website www.doctorfarrah.com "are DRF's conduct," not hers.[6] There was evidence at the hearing, however, that, in addition to the website, Agustin-Bunch also maintained a personal Facebook page and other social media sites, where she identified herself as a doctor and engaged in conduct the Board determined was the practice of medicine. Thus, the cease-and-desist order is not limited to content found on the www.doctorfarrah.com website. Moreover, Agustin-Bunch's Facebook page contained links directing visitors to the www.doctorfarrah.com website, which includes an "About Doctor Farrah" page and articles purportedly written by Agustin-Bunch. Thus, even if the website is "operated by DRF," its content, assuming it is the practice of medicine as the Board found, constitutes Agustin-Bunch's unlicensed practice of medicine.

Agustin-Bunch asserts that the conduct identified by the Board as the unlicensed practice of medicine does not meet the statutory definition contained in the MPA.[7] The MPA defines "practicing medicine" as "the diagnosis, treatment, or offer to treat a mental or physical

---

§ 311.024 ("The heading of a title, subtitle, chapter, or section does not limit or expand the meaning of the statute.").

[5] DRF refers to DRF, LLC, an Oklahoma limited liability company.

[6] Agustin-Bunch raises this complaint in her third issue.

[7] Agustin-Bunch raises this complaint in her fourth issue.

9

disease or disorder or a physical deformity or injury by any system or method, or the attempt to affect cures of those conditions by a person who: (A) publicly professes to be a physician or surgeon; or (B) directly or indirectly charges money or other compensation for those services." Tex. Occ. Code § 155.002(a)(13). Agustin-Bunch does not have a license to practice medicine issued under the MPA. On social media sites and on the www.doctorfarrah.com website, Agustin-Bunch publicly professes to be a physician. She has publicly posted numerous articles including those titled: "Natural Nasal Polyps Treatments," "How to Prevent and Treat Ingrown Toenails," "How to Tell if Your Baby has Asthma," "Natural Home Remedies for Heart Palpitations," and "The Leaky Gut—Signs and Symptoms, and How to Heal It." In these articles Agustin-Bunch describes treatments for these various diseases and disorders. One of the articles she posted purports to identify "Top 8 Ways to Heal Our World From Cancer," in which she states that "[t]he main strategy for eliminating cancers is to stop feeding it fuel to grow" and discourages treating cancer with chemotherapy or radiation therapy, stating "[c]hemotherapy actually destroys our immune system [] and even speeds up the growth of new cancerous cells which spread throughout the body." We reject Agustin-Bunch's assertion that she was merely "giving advice regarding the use and role of food and food ingredients, including dietary supplements," which the MPA does not prohibit. *See id.* § 151.053(a) ("This subtitle does not prohibit a person from giving advice regarding the use and role of food and food ingredients, including dietary supplements."). While Agustin-Bunch's publications certainly do that, they go beyond that in advising how to diagnose and treat certain diseases and disorders. The evidence in this record provides a reasonable basis for the Board's finding that Agustin-Bunch engaged in the "practice of medicine" as that term is defined in the MPA.

10

Agustin-Bunch asserts that the Board did not have the authority to discipline her because her conduct was not "connected with the practice of medicine in a manner that makes it likely to deceive the public."[8]  Relying on *Aleman v. Texas Medical Board*, Agustin-Bunch argues that to violate the MPA, the practice of medicine must be "in a manner that makes it likely to deceive the public."  *See Aleman v. Texas Med. Bd.*, 573 S.W.3d 796 (Tex. 2019).  The MPA does not include a requirement that the unlicensed practice of medicine be in a manner likely to deceive the public and *Aleman* does not support Agustin-Bunch's argument.  In *Aleman*, the Texas Supreme Court was determining whether the Board properly imposed disciplinary sanctions on a licensed physician who violated a state law that requires medical certifications for death certificates to be completed electronically.  *Id.* at 797.  The Board had disciplined Aleman under MPA section 164.052, which prohibits a physician from "commit[ting] unprofessional or dishonorable conduct that is likely to deceive or defraud the public."  *See* Tex. Occ. Code § 164.052(a)(5).  The MPA defines "unprofessional or dishonorable conduct" for purposes of section 164.052(a)(5) to include "commit[ting] an act that violates any state or federal law if the act is connected with the physician's practice of medicine."  *Id.* § 164.053(a)(1).  The court of appeals affirmed the Board's sanction, but the Texas Supreme Court reversed, holding that disciplining Aleman pursuant to section 164.052(a)(5) was not authorized because the conduct at issue was not "an act that is connected with the practice of medicine in a manner likely to deceive or defraud the public" as required by the statute.  *Aleman*, 573 S.W.3d at 805.  The *Aleman* court did not address the unlicensed practice of medicine that is at issue in this case, and

---

[8]  Agustin-Bunch raises this complaint in her fifth issue.

11

neither *Aleman* nor the MPA includes a requirement that the unlicensed practice of medicine is only prohibited if it is done "in a manner likely to deceive or defraud the public."[9]

### Is the Cease-and-Desist Order Valid?

Agustin-Bunch asserts that the cease-and-desist order is not valid because it fails to adequately specify the prohibited conduct.[10] The cease-and-desist order prohibits Agustin-Bunch from "acting as, or holding herself out to be, a licensed physician in the State of Texas," and orders her to cease "any unlicensed practice of medicine in the State of Texas." The first prohibition is sufficiently specific—Agustin-Bunch must not act or hold herself out as a person licensed to practice medicine under the MPA.[11] The second prohibition is against the unlicensed

---

[9] Agustin-Bunch's seventh issue asserts that she did not violate the Texas Healing Art Identification Act (THAIA). Although the Board made a finding that she did not comply with one of the THAIA's provisions, the Board did not include a violation of that provision in its conclusions of law. The conclusions of law forming the basis of the cease-and-desist order are that Agustin-Bunch practiced medicine in the State without a license, *see* Tex. Occ. Code § 155.001, and failed to comply with the registration requirements of the MPA, *see id.* § 165.159. Because it does not form the basis for the cease-and-desist order, Agustin-Bunch has not demonstrated that this finding prejudiced her substantial rights as required for reversal or remand of the Board's order. *See* Tex. Gov't Code § 2001.174(2) (court shall reverse or remand case when "substantial rights of appellant" have been prejudiced because of administrative finding). The same analysis applies to Agustin-Bunch's complaint that the cease-and-desist order includes a finding that she "received a warning letter from the Food and Drug Administration notifying her that her products are mislabeled and cannot be advertised as a treatment for certain diseases," which she raises in her ninth issue. Agustin-Bunch also incorrectly states that the Board disciplined her for violating the United States Food, Drug & Cosmetics Act, which she complains of in her sixteenth issue. The cease-and-desist order is not based on violations of the federal statute but, rather, of the MPA.

[10] Agustin-Bunch raises this complaint in her sixth issue.

[11] In her eighth issue, Agustin-Bunch states that she did not hold herself out to be a physician licensed under the MPA. The cease-and-desist order does not make a finding that she did so, and Agustin-Bunch does not explain how the order's prohibition against doing so prejudices any of her substantial rights. *See id.* § 2001.174(2) (court shall reverse or remand

12

"practice of medicine," a term defined in the MPA as "the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions."  Agustin-Bunch maintains, with no supporting authority, that this is not a valid cease-and-desist order because, in her view, MPA section 165.052 requires that the order "specify the prohibited activity" and may not simply prohibit the "unlicensed practice of medicine."  *See* Tex. Occ. Code § 165.052.  We discern no such limitation in the statute.  Section 165.052 authorizes the Board to take action against people not licensed under the MPA to prevent them from violating a statute related to the practice of medicine and to "issue a cease-and-desist order prohibiting the person from engaging in the activity."  *Id.*  Here, the violation and, consequently "the activity," is the unlicensed practice of medicine.  Moreover, the findings in the order provide guidance as to what activities Agustin-Bunch has engaged in that constitute the unlicensed practice of medicine that she must refrain from doing; specifically, offering medical advice on social media sites and asserting that, "based on her medical knowledge, her supplements should be used to treat ailments such as cancer, diabetes, and heart diseases."  To the extent Agustin-Bunch is otherwise prohibited from practicing medicine in the State, such prohibition cannot prejudice her "substantial rights" because she does not have a right to practice medicine in the State without a license. *See* Tex. Gov't Code § 2001.174(2) (court shall reverse or remand case when "substantial rights of appellant" have been prejudiced because of administrative decision); Tex. Occ. Code § 151.003(1) (setting forth legislative finding that "the practice of medicine is a privilege and

---

case when "substantial rights of appellant" have been prejudiced because of administrative decision).

13

not a natural right of individuals"); *see also* Tex. Const. art. XVI, § 31 (authorizing legislature to "pass laws prescribing the qualifications of practitioners of medicine").

Agustin-Bunch also challenges the validity of the cease-and-desist order on the grounds that it does not include supporting conclusions of law; it does not support its conclusions of law with findings supported by substantial evidence; and its findings, conclusions, and inferences are arbitrary, capricious and characterized by an abuse of discretion or clearly unwarranted exercise of discretion.[12] We have previously set forth the findings and conclusions made by the Board in the cease-and-desist order. The order contains conclusions of law supporting the order's prohibitions, and the relevant findings (Findings of Fact 1-4) are supported by substantial evidence. The conclusion of law supporting the Board's order that Agustin-Bunch not hold herself out as a physician licensed to practice in the State and not engage in the unlicensed practice of law is that the MPA prohibits a person who is not licensed and registered under the MPA from practicing medicine in this State. *See* Tex. Occ. Code §§ 155.001, 165.159. There is no dispute that Agustin-Bunch does not hold a license issued under the MPA and that she has resided in Texas since 2020 (Findings of Fact 2 and 3). Finding of Fact 1 states that "Respondent received all notice required by law and all jurisdictional requirements have been satisfied." The notice requirements for a cease-and-desist hearing are set forth in the Texas Administrative Code and provide:

> Upon receipt of information that an individual has practiced medicine without a license, the board shall schedule a cease and desist hearing before a panel of board representatives at the earliest practicable time after providing the individual with at least 30 days' notice. The notice to the individual will provide the date, time, and location of a hearing to determine whether the individual should receive

---

[12] Agustin-Bunch raises these complaints in her tenth, twelfth, thirteenth, and seventeenth issues.

14

a cease and desist order. The notice shall also include all the evidence upon which the Board staff will rely on to make its case for issuance of a cease and desist order.

22 Tex. Admin. Code § 187.83 (Tex. Med. Bd., Proceedings for Cease and Desist Orders). The record includes the notice mailed to Agustin-Bunch and her counsel on August 5, 2022, which complies with section 187.83, included a link to the location of the online hearing, and attached the exhibits the Board staff intended to offer at the hearing. This notice was delivered to Agustin-Bunch on August 8, 2022, more than thirty days before the hearing on September 9, 2022. Thus, Finding of Fact 1 is supported by substantial evidence. The cease-and-desist order also includes a conclusion of law that the Board had jurisdiction to proceed pursuant to MPA section 155.001, based on the appearance that Agustin-Bunch was practicing medicine without a license issued under the MPA. *See* Tex. Occ. Code § 155.001.

Finding of Fact 4 sets forth the ways in which the Board staff asserted that Agustin-Bunch was engaging in the practice of medicine. The evidence offered at the hearing included copies of the various articles and videos in which Agustin-Bunch provided medical advice and recommended supplements and treatments for various conditions and diseases, including cancer and diabetes. These findings support that Agustin-Bunch engaged in activities constituting the unlicensed practice of medicine and correspond to the Board's conclusion that the unlicensed practice of medicine violates the MPA, for which it was authorized to issue a cease-and-desist order.

### Did the Cease-and-Desist Order Proceedings Comply with Relevant Statutes and Board Rules?

Agustin-Bunch asserts that the Board acted arbitrarily and capriciously by disciplining her without specifying the conduct or statements it considered to be a violation of

15

the MPA and by failing to inform her that the proceedings constituted a "contested case" under the APA.[13] With regard to the alleged concealment of the nature of the proceedings, Agustin-Bunch refers to a letter she contends was sent to her counsel before the cease-and-desist hearing was conducted. Augustin-Bunch raises this issue for the first time in this Court, and the referenced letter is not part of the administrative record. Even assuming this issue was properly before us, it lacks merit. The notice provided to Agustin-Bunch informed her that the cease-and-desist hearing would be conducted in accordance with the procedures outlined in Board rule 187.83. *See* 22 Tex. Admin. Code § 187.83. That section plainly states that the hearing would be conducted "in accordance with the Administrative Procedures Act (APA), § 2001.081." Agustin-Bunch was represented by counsel who is presumed to be familiar with previous cases of this Court analyzing cease-and-desist orders under the APA, *see Brooks*, 2015 WL 3827327, at *2. And the statement in the letter that Agustin-Bunch maintains is misleading was: "There is no formal discovery during an investigation and such requests are only applicable in a contested case filed at the State Office of Administrative Hearings (SOAH)." The notice did not state that the cease-and-desist order was not governed by the APA or that it did not constitute a contested case. Rather, the statement was that this proceeding was not governed by the discovery procedures applicable in a contested case filed at SOAH. With regard to specifying the conduct the Board considered to be in violation of the MPA, as previously noted, the Board provided Agustin-Bunch with copies of the exhibits it intended to offer at trial, which were copies of videos, articles, and statements posted by Agustin-Bunch on several social media sites.

---

[13] Agustin-Bunch raises these complaints in her fourteenth and fifteenth issues.

16

***Did the District Court Erroneously Exclude Evidence Proffered by Agustin-Bunch?***

Agustin-Bunch asserts that when conducting the suit for judicial review, the district court abused its discretion by refusing to admit as evidence certain correspondence between her and the Board and an email complaint from the Federal Drug Administration.[14] These documents were attached as Appendix II and Appendix III to a brief she filed in the district court. "A trial court abuses its discretion 'if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles.'" *Walker v. Baptist St. Anthony's Hosp.*, 703 S.W.3d 339, 343 (Tex. 2024) (citing *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002)). The Texas Government Code provides that "[a] court shall conduct the review sitting without a jury and is confined to the agency record, except that the court may receive evidence of procedural irregularities alleged to have occurred before the agency that are not reflected in the record." Tex. Gov't Code § 2001.175(e). A party may "apply to the court to present additional evidence" but only if the "additional evidence is material and [] there were good reasons for failure to present it in the proceeding before the state agency." *Id.* § 2001.175(c). Agustin-Bunch never attempted to admit the documents at the hearing before the Board and has failed to demonstrate that the items are material. The letter Agustin-Bunch sought to have admitted is the letter discussed previously that she maintains "concealed" the fact that the proceeding was governed by the APA. This letter is not material to any issue before the district court or this Court. The email from the Food and Drug Administration is not material to any issue before the district court or this Court because, although the Board made a finding that she received a warning letter from the Food and Drug Administration that she should not be advertising certain supplements as treatment for certain diseases, that finding was not the basis

---

[14] Agustin-Bunch raises this complaint in her eleventh issue.

for the Board's conclusion that Agustin-Bunch had engaged in the unlicensed practice of medicine. Rather, it was her own conduct that led the Board to issue the cease-and-desist order. The district court did not abuse its discretion in excluding the evidence proffered by Agustin-Bunch.

## CONCLUSION

For the reasons set forth in this opinion, we overrule each of Agustin-Bunch's seventeen issues and affirm the district court's judgment.

_____
Chari L. Kelly, Justice

Before Justices Triana, Kelly, and Crump

Affirmed

Filed: July 30, 2025

18